IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ZIKITERAN D.ROBINSON,           ) | C/A No. 4:07-3118-HMH-TER |
|                Petitioner,     ) | |
| vs.                             ) | REPORT AND RECOMMENDATION |
| J. OWENS, WARDEN FCI-           ) | |
| OAKDALE, AND BUREAU             ) | |
| OF PRISONS,                     ) | |
|                Respondent.    ) | |

Petitioner, Zikiteran D. Robinson ("Petitioner/Robinson"), is currently incarcerated at the Federal Correctional Institution ("FCI") in Oakdale, Louisiana. On September 13, 2007, the petitioner appearing pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The petitioner asserts that the Federal Bureau of Prisons ("BOP") has failed to give him credit for time served in a state detention center.

On December 28, 2007, the respondents filed a motion for summary judgment, along with supporting memorandum and an affidavit and exhibits. (Document # 15.) The undersigned issued an order filed January 2, 2008, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir.1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On February 11, 2008, the petitioner filed a response opposing

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the District Court Judge.

the respondents' motion for summary judgment and a cross-motion for summary judgment. (Document # 20.)

## I. FACTS/PROCEDURAL HISTORY

As noted above, the petitioner is currently incarcerated at the FCI- Oakdale. At the time the petitioner filed his habeas petition, however, he was housed at the FCI-Williamsburg, South Carolina.[2] The petitioner alleges that the Bureau of Prisons (BOP) is erroneously denying him prior custody credit or jail credit. The petitioner contends that he is entitled to a 34-month credit for time he spent in a state jail to be applied toward his federal sentence.

On May 22, 2000, the petitioner was arrested by Louisiana state authorities in DeSoto Parish, Louisiana, for possession of cocaine with intent to distribute and possession of marijuana. (Mem. Supp. Pet. at 1.) He was placed in the Mansfield/DeSoto Parish Detention Center. (*Id.*) On October 27, 2000, a federal grand jury in the Western District of Louisiana returned a four-count federal indictment against the petitioner charging him with possession with intent to distribute 50 grams or

---

[2]On November 7, 2007, the undersigned filed an order addressing whether the District of South Carolina was the proper district to hear this habeas case. (Document #12.) At the time the petitioner originally filed this case, he was confined at FCI-Williamsburg. However, on November 2, 2007, the petitioner was transferred to FCI-Oakdale. The undersigned concluded that since the District of South Carolina had personal jurisdiction over petitioner's custodian when the petitioner originally filed this habeas corpus action, the District Court of South Carolina retained jurisdiction to consider the petitioner's habeas corpus claims even though he had been transferred citing Rasco v. Super. of Metropolitan Corr. Center, 551 F.Supp. 783, 784-85 (S.D.Fla. 1982). The undersigned specifically stated that the parties were not precluded from filing a motion to transfer this habeas corpus action to the district where the petitioner is currently confined. The respondent responded that it "is not aware of any adverse or prejudicial effect that continuing this case in the District of South Carolina would have on either party. The petitioner is challenging the computation of his federal sentence; thus, any decision rendered by the Court will be given by full force and effect by any custodian within the BOP." (Resp't's Mem. Supp. Summ. J. Mot. at 3.) The petitioner also has not filed a motion to transfer. Accordingly, the undersigned will address the merits of this petition.

2

more of cocaine base.[3] On November 8, 2000, the petitioner was borrowed from the state authorities by the United States Marshals Service ("USMS") via a writ of habeas corpus ad prosequendum to appear for the federal charges. (Pet'r's Mem. Supp. Pet. at 1.)   On September 28, 2001, the petitioner was sentenced to a 120-month federal term of imprisonment by the United States District Court for the Western District of Louisiana on the federal charge and on November 16, 2001, he was returned by the USMS to the Louisiana Department of Corrections ("LDC").

On February 4, 2003, the petitioner was sentenced to five years in Louisiana state court for possession of cocaine with intent to distribute. The Louisiana state court ordered the state sentence to run concurrently to any other sentence. On March 19, 2003, the petitioner completed service of his state sentence and the LDC released him into the custody of the federal government for service of his federal sentence. The petitioner's federal sentence commenced on March 19, 2003, and he has not received any credit towards his federal sentence for the time he spent in the custody of the LDC. The petitioner filed a request for nun pro tunc designation which the BOP denied initially and on appeal.

## II. PETITIONER'S GROUND FOR RELIEF

In his *pro se* petition for writ of habeas relief, the petitioner raises the following grounds for relief, quoted verbatim:

---

[3]The petitioner argues that the respondent attempted to mislead the court when it stated that the petitioner was indicted on federal charges on October 27, 2001, when the petitioner was actually indicted on the federal charges on October 27, 2000. He alleges this was an intentional act to mislead the court and "cover up the fact that [the petitioner] was in federal custody for over one year." (Pet'r's Mem. Opp. Summ. J. Mot. at 7.)  The respondent states that the date was taken from an incorrect pre-sentencing report. (Resp't's Reply Mem. at 2-3 & Ex. A.)  The undersigned finds no evidence that this was anything other a typographical error in the pre-sentencing report which the respondent relied upon in preparing for this case. (*Id*. Ex. A.)

3

> **Ground One:** Petitioner avers that he's been held unlawfully because he's not being awarded jail credit to go towards his federal sentence for time spent in state and federal custody for the same offense. (Double Jeopardy)
>
> **Ground Two:** Petitioner avers that the federal government was using the state detention for an holding facility upon pending indictment. See Preliminary Transcript pgs. 2-3.
>
> **Ground Three:** The state judge imposed a concurrent sentence to run concurrently with petitioner's federal sentence.
>
> **Ground Four:** Petitioner show cause that the federal government made the initial arrest on May 22, 2000.

(Pet. 5-5.)   The petitioner requests that he be given jail credit for the thirty-four (34) months he alleges he spent in state and federal custody for the "same offense." (Pet. 8.)

### III.  SUMMARY JUDGMENT

On December 28, 2007, the respondents filed a return and memorandum of law in support of their motion for summary judgment. As stated, the petitioner filed a response in opposition and his own motion for summary judgment on February 11, 2008.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV.  ARGUMENTS/FINDINGS

The petitioner alleges that "the BOP has miscalculated his federal sentence, and has failed to comply with the state's concurrent sentence." (Pet'r's Mem. Supp. Pet. at 4.) Specifically, he alleges he is entitled to Willis credit[4] and jail credit of 34 months starting May 22, 2000, because 1) the federal authorities made the initial arrest; 2) the federal authorities were using the state detention

---

[3]Willis v. United States, 438 F.2d 923 (5th Cir. 1993). In Willis, the court awarded federal credit based upon a state sentence because the defendant was denied release on state bail because a federal detainer has been lodged against him.

5

center as a designated federal holding facility because he was being held under a pending federal indictment; 3) he was convicted in violation of double jeopardy because he was convicted and sentenced for the "same offense" in the state and federal courts; and 4) his state sentence was imposed to run concurrently with his federal sentence "because his federal sentence exceeds his state sentence." (*Id*. at 6.)

Initially, the undersigned must address whether the petitioner's double jeopardy argument raised in Ground One regarding his federal and state convictions and sentences for the "same offense" is properly before the court. The petitioner has brought this habeas action pursuant to § 2241. "A federal prisoner seeking to challenge the legality of his conviction or sentence must proceed pursuant to § 2255, with § 2241 petitions generally reserved for challenges to the execution of the prisoner's sentence." In re Vial, 115 F.3d 1192, 1194 n. 5 (4th Cir.1997). However, in limited circumstances, § 2255 is "inadequate or ineffective" to test the legality of the detention. In those cases, a prisoner may file a § 2241 petition in the district of his confinement to challenge his conviction. In re Jones, 226 F.3d 328, 333 (4th Cir. 2000). In Jones, the court concluded that § 2255 is inadequate or ineffective, and § 2241 may be used:

> to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

226 F.3d at 333-34.

The petitioner's argument regarding double jeopardy clearly challenges the legality of his convictions and sentences. Therefore, the petitioner's double jeopardy claims should have been

presented in a motion under § 2255.  Vial, 115 F.3d at 1194 n. 5.  Additionally, the petitioner has failed to demonstrate that § 2255 would be inadequate or ineffective to test the legality of his detention.  Jones, 226 F.3d at 333.[5]   This action under § 2241 is not the proper avenue for the petitioner to raise his double jeopardy argument.

In any event, "it is well established that a federal prosecution may follow a state prosecution for the same acts without violating the Double Jeopardy Clause."  Nealy v. United States, 2007 WL 1290262 *1 n. 2 (D.S.C. 2007)(internal citations omitted).  The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The two components to this amendment guarantee protection from multiple punishments for the same offense and protection from being tried twice for the same crime. *See* United States v. Ragins, 840 F.2d 1184, 1187 (4th Cir.1988) (*citing* Brown v. Ohio, 432 U.S. 161, 165 (1977)).  The Double Jeopardy Clause is simply not applicable to a sentence computation made by the BOP.

It appears that the petitioner's remaining grounds challenge the calculation or execution of the sentence by the BOP, and therefore § 2241 is the appropriate vehicle for these claims.  Vial, 115 F.3d at 1194.  Further, the undersigned notes that the respondent concedes that the petitioner has exhausted his administrative remedies with respect to these claims. (Resp't's Mem. Supp. Summ. J. Mot. at 4.)

---

[4]Additionally, the court notes that the petitioner was convicted and sentenced in the Western District of Louisiana. Therefore, this court would lack jurisdiction to entertain a § 2255 petition. Rather, the petitioner would pursue such a request in the sentencing court. In re Vial, 115 F.3d 1192.

Turning then to the petitioner's allegations regarding his sentence, the undersigned notes that pursuant to 18 U.S.C. § 3585, the Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, and he has delegated that authority to the BOP under 28 C.F.R. § 0.96 (1992). The computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination: first, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence.

Further, it is well-settled that a federal sentence cannot commence before it is imposed, United States v. Walker, 98 F.3d 944, 945-46 (7th Cir.1996), and a district court has no power to award presentence credit. 18 U.S.C. ¶ 3585(b); United States v. Wilson, 503 U.S. 329, 333 (1992). The fact that a state sentencing judge may have directed that a state sentence run concurrently with a federal sentence has no bearing on when federal custody commences for purposes of determining the starting date of the federal sentence. *See* Del Guzzi v. United States, 980 F.2d 1269, 1270 (9th Cir. 1992); Coccimiglio v. DeRosa, 2006 WL 1897269 (D.Ariz. 2006). In addition, pursuant to the provisions of 18 U.S.C. § 3584(a), multiple terms of imprisonment imposed at different times, such as the petitioner's state and federal sentences, run consecutively absent an affirmative order of the sentencing court that they run concurrently.

In Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), the court explained that the sentencing court's authority under U.S.S.G. § 5G1.3 to "adjust" a sentence is distinct from the BOP's authority under 18 U.S.C. § 3585(b) to "credit" a sentence, even though the benefit to the defendant may be the same. *Id.* at 131-33. Under § 5G1.3(b), if convictions arise from the same course of conduct, district courts may reduce the later sentence to account for the amount of time already served, on the

prior, undischarged sentence, thus enabling the sentences to run concurrently and terminate at the same time. On the other hand, the credit that the BOP exclusively awards under § 3585(b) is for time served in detention prior to the date the federal sentence commences. *Id.*

However, a prisoner cannot receive double credit, and therefore prior custody credit will not ordinarily be granted under § 3585 if the prisoner has already received prior custody credit toward another sentence. United States v. Mojabi, 161 F.Supp.2d 33, 36 (D.Mass. 2001)(holding "section 3585(b) prohibits 'double-credit', i.e. awarding credit for presentence time served against one sentence if that time has already been credited against another sentence."); United States v. Arroyo, 324 F.Supp.2d 472 (S.D.N.Y. 2004) (finding that the BOP is precluded from granting credit for time in pre-sentence detention that has already been credited against another sentence); Bacon v. Federal Bureau of Prisons, 2001 WL 34684734 (D.S.C. 2001).

Furthermore, in United States v. Smith, 472 F.3d 222, 225 (4th Cir. 2006), the Fourth Circuit held that the plain language of § 3584 does not grant a district court the authority to order that its sentence run consecutively to a future sentence. "Rather, the statute gives a court power to determine whether a sentence will 'run concurrently or consecutively' only when a defendant is (1) sentenced to 'multiple terms of imprisonment . . . at the same time,' or (2) 'already subject to an undischarged term of imprisonment.'" 472 F.3d at 225.

Notwithstanding the limits placed on the sentencing court's authority to order a concurrent sentence, § 3621(b) grants the BOP wide latitude in selecting the place of a federal prisoner's confinement. The BOP has the statutory authority to decide whether a state prison where an inmate served a state sentence should be designated as a place of federal confinement nunc pro tunc. *Barden v. Keohane*, 921 F.2d 476, 480-483 (3rd 1990); BOP Program Statement 5160.05(9)(b)(4).

BOP policy requires that an inmate's request for presentence credit toward a federal sentence for time spent in service of a state sentence be considered as a request for nunc pro tunc designation pursuant to Barden; Program Statement 5160.05(9)(b)(4). Pursuant to § 3621(b), the following factors are to be considered:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
> (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). *See also* Trowell v. Beeler, 2005 WL 1181858 at *4 (4th Cir. 2005) (holding "the BOP must exercise its own independent judgment, taking into account all applicable factors in § 3621(b), including the views of the sentencing court"). Pursuant to § 3621, the BOP has promulgated guidelines to assist it in making determinations for designating a state institution for service of a federal sentence. BOP Program Statement 616.05.

While recognizing the general rule that a federal sentence runs consecutively to an existing sentence if the federal judge does not state that the sentences are to run concurrently, BOP policy allows exceptions based on the merits of a particular case. BOP Program Statement 5160.05(7)(b) & (8)(a). The BOP will designate a state institution for concurrent service of a federal sentence only "when it is consistent with the intent of the federal sentencing court or with the goals of the criminal

justice system." BOP Program Statement 5160.05(3)(a) & (8).  In exercising its discretion to make such an exception for concurrent designation, the BOP is to consider: the inmate's disciplinary history, his institutional adjustment, any recommendations of the wardens at the state and federal institutions, any recommendations by the United States Attorney, the intent of the federal sentencing court "if available," and "any other pertinent information."  BOP Program Statement 5160.05(8)(a). It is also appropriate for the BOP to consider, along with other factors, the sentencing court's intent. 18 U.S.C. § 3621(b)(listing factors BOP should consider in determining place of imprisonment); BOP Program Statement 5160.05.

Thus, while under no obligation to grant a nunc pro tunc designation request, the BOP is to consider the language of the federal and state judgments, the state sentence data record to include jail credit, and "any other pertinent information relating to the federal and state sentences."  BOP Program Statement 5160.05(9)(b)(4)(b). Further, the BOP's decision to grant or deny nunc pro tunc designation is subject to judicial review only for the purposes of abuse of discretion. <u>Barden</u>, 921 F.2d at 478.

Turning to the petitioner's case,  the  earliest date the petitioner's federal sentence could have possibly commenced was September 28, 2001, the date the federal sentence was imposed and, at that time, the petitioner was in the primary custody of Louisiana and the federal court was silent as to whether the federal sentence was to run consecutively or concurrently with any other sentence. However, in any event, as the petitioner at that time had not been sentenced in state court, the sentencing court did not have the authority to order the federal sentence to run concurrently to any future state sentence.  United States v. Smith, 472 F.3d 222, 225 (4th Cir. 2006)(holding that the

11

plain language of § 3584 does not grant a district court the authority to order that its sentence run consecutively to a future sentence).

In this case, the petitioner's sentence actually commenced on the day he was released from state custody and transferred to federal custody March 19, 2003.  Pinaud v. James, 851 F.2d 27, 30 (2nd Cir.1988)(holding a federal sentence does not commence until the Attorney General receives the defendant into custody for service of the federal sentence.)  Prior to March 19, 2003, the only time the petitioner was in federal custody after his state arrest was during the time period he was borrowed from Lousiaina via a federal writ of habeas corpus ad prosequendum.  However, a prisoner is not "in custody" when he appears in another jurisdiction's court pursuant to an ad prosequendum writ; he is merely "on loan" to that jurisdiction.  Stewart v. Bailey, 7 F.3d 384, 389 (4th Cir. 1993). Therefore, the petitioner was in state custody from the day of his arrest May 22, 2000, through March 19, 2003,[6] and he was not entitled to have any of this time credited to his federal sentence.

On March 15, 2006, the petitioner requested that the BOP grant him nunc pro tunc designation pursuant to § 3621 for the time spent in state custody.  On March 27, 2006, the Warden denied the petitioner's request. (Mem. Supp. Pet. 35-36.)   The petitioner appealed and on May 3, 2006, the Regional Director, denied his appeal.  (*Id*. at 37.) The petitioner again appealed and on September 18, 2006, the Chief Designations and Sentence Computation Center issued the BOP's final agency decision denying the petitioner's request for nunc pro tunc designation.  (*Id*. at 39-40.)

---

[6] The petitioner received jail credit toward his state sentence from May 22, 2000, the day of his arrest, through February 3, 2003, the day his state sentence commenced.  Thereafter, from February 4, 2003, through March 19, 2003, the petitioner was credited with actually serving the state sentence.

The BOP's final administrative decision set out the specific facts of the petitioner's situation and considered the appropriate factors, including the nature of the petitioner's offenses, the petitioner's criminal history, the sentencing judge's intent. (*Id*.)  The applicable authorities, Trowell and 18 U.S.C. §§ 3584 & 3621, were referenced and the BOP concluded that a nun pro tunc designation was not appropriate. (*Id*. at 39.)  The undersigned cannot find that the BOP abused its discretionary authority by declining to make a nunc pro tunc designation of the LDC as the facility for the petitioner to serve his federal sentence.

The petitioner also alleges that he is entitled to Willis credit. In Willis, the Fifth Circuit held that if a petitioner "was denied release on bail [by the state] because the federal detainer was lodged against him, then that was time spent in custody in connection with the [federal] offense." Willis v. United States, 438 F.2d at 925 (citation and internal quotation marks omitted).  Here, Willis credit is not available to the petitioner because nothing in the record indicates that the petitioner was denied release on bail by the Louisiana state authorities because a federal detainer was lodged against him. Accordingly, the petitioner is not entitled to Willis credit.

Finally, the petitioner alleges he was in the primary custody of the federal government because the federal government arrested him.  BOP Program Statement 5880.28 states that:

> If the prisoner is serving no other federal sentence at the time the sentence is imposed, and is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently.

This policy applies the common law doctrine regarding priority of custody which was adopted to provide an orderly method to prosecute an individual who has violated the law of more than one

13

sovereign. The doctrine was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). It was developed to promote comity, mutual assistance, and orderly procedure. Ponzi, 258 U.S. at 260-64. The doctrine provides that the sovereign that first arrests an individual has primary control, or custody, over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him, and it is entitled to have him serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction.

"Of course, the sovereign with priority may elect to relinquish its priority to another sovereign. United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005); United States v. Warren, 610 F.2d 680, 684-85 (9th Cir.1980). Relinquishment of priority generally occurs in one of four ways: (1) release of the person on bail; (2) dismissal of the charges; (3) release of the person on parole; or (4) expiration of the person's sentence. Cole, 416 F.3d at 897. A sovereign may also relinquish primary jurisdiction when it surrenders a prisoner to another sovereign for trial, sentencing, and execution of the sentence, but such relinquishment does not extinguish the surrendering sovereign's right to the prisoner's return to its custody for trial. DeLong v. United States, 474 F.2d 719, 720 (5th Cir.1973) (per curiam). Additionally, a state sovereign may relinquish or waive primary jurisdiction by delivering the prisoner "into federal custody for the purpose of beginning his federal sentence." See Trowell, 135 Fed. App'x at 594. Release from actual physical custody is the primary component of every relinquishment of priority of jurisdiction. Without relinquishing its priority, a sovereign may loan a defendant in its custody to another sovereign for criminal proceedings in the receiving jurisdiction by way of a writ of habeas corpus ad prosequendum. Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir.1980). Such loan results in only a temporary loss of jurisdiction. *Id.*

Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers v. Holland, 920 F.Supp. 618, 622 (M.D.Pa.1982).

As noted above, the BOP has incorporated this common law doctrine into its policies. *See* BOP Program Statement 5880.28. Pursuant to these policies, when a federal district court sentences a prisoner who at the time is in the primary custody of a state, the prisoner generally will be returned to the state after federal sentencing and the BOP will commence the prisoner's federal sentence when the state relinquishes its custody and releases the prisoner to federal custody. *See* 18 U.S.C. § 3585(a). On the other hand, when a prisoner is in the primary custody of the federal government on the date his federal sentence is imposed, the BOP will deem the sentence to have commenced on that date even if a state sentence is running concurrently. BOP Program Statement 5880.28.

The petitioner alleges he was arrested jointly by the state and federal authorities. (Pl.'s Aff. ¶ 1.) He contends that the state of Louisiana had no intention of prosecuting him on state charges, unless the federal government refused to prosecute. (*Id*. at ¶ 4.) He argues that the federal government initiated the investigation. (Pet'r's Mem. Opp. Summ. J. Mot. at 10.) Further, he argues, that the state relinquished its custody by not acting on the state charges for over a year and that he pled guilty and was sentenced by the federal court when there were no pending state convictions. (*Id*. a t 12.) In essence, he argues that the first sovereign to obtain a conviction was the federal government, and therefore, he was in federal custody. (*Id.*) However, the law is clear, it is the sovereign which first arrests which has the primary custody. Here, the pre-sentencing report reflects that the petitioner was arrested by the Louisiana DeSoto Parish Sheriff's Office on May 22,

15

2000, for possession, distribution, manufacture of Schedule I and II drugs. (Resp't's Reply Mem. Ex. B - Pre-sentencing Report at 10 ¶¶ 54, 55.) The only evidence in the record is that Louisiana arrested the petitioner and thus obtained primary custody. Accordingly, the petitioner's argument is without merit. In any event, even if the United States had obtained primary jurisdiction over the petitioner as the first arresting sovereign, it yielded that superior jurisdictional right when it permitted the petitioner to be incarcerated in state prison without a challenge to the state's jurisdiction. Thomas v. Whalen, 962 F.2d 358, 362 n.7 (4th Cir.1992). Additionally, the undersigned notes that when the petitioner was sentenced in the federal court on November 8, 2000, he was on loan to the federal authorities pursuant to a writ of habeas corpus ad prosequendum thereby negating the conclusion that he was already in federal custody beginning on the date of his arrest on May 22, 2000. Such a writ would have been unnecessary.

Moreover, the fact that the state sentencing judge may have directed that the state sentence run concurrently with the federal sentence has no bearing on when federal custody commences for purposes of determining the starting date of the federal sentence. *See* Del Guzzi v. United States, 980 F.2d 1269, 1270 (9th Cir.1992)(state judge's authority was limited to sending petitioner to state prison to serve his sentence regardless of the direction that the federal and state sentences be served concurrently and that the state sentence be served in a federal facility).

## CONCLUSION

Based on the foregoing, it is recommended that the Respondent's Motion for Summary Judgment (document #15) be GRANTED; the Petitioner's Motion for Summary Judgement

DENIED (document # 20); and the Petitioner's Petition for Writ of Habeas Corpus DENIED, and this Petition dismissed.

                                                Respectfully submitted,

                                                s/Thomas E. Rogers, III
                                                Thomas E. Rogers, III
February 28, 2008                           United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**